UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGARET MARY WOLFE,

    Plaintiff                                                    Civil Action No. 10-12058

v.

                                                         District Judge Gerald E. Rosen
                                                         Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Margaret Mary Wolfe brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits. Before the Court are the parties' cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment be DENIED and Plaintiff's motion GRANTED to the extent that the case be remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") on September 7, 2005 alleging disability as of January 15, 2005 (Tr. 20). After the initial denial of benefits, Plaintiff requested an administrative hearing, held in Oak Park, Michigan on March 21, 2007 (Tr. 313). Administrative Law Judge ("ALJ") Jerome B. Blum presided (Tr. 313). Plaintiff, represented by attorney Gerald Keller, testified, as did vocational expert ("VE") Lawrence Zatkin (Tr. 315-346, 347-350). On October 15, 2007, ALJ Blum determined that Plaintiff could perform her past relevant work as a cashier, receptionist, or data entry clerk (Tr. 24). On March 26, 2010, the Appeals Council modified the ALJ's decision, finding that Plaintiff was unable to perform her past relevant work, but was nonetheless capable of performing "suitable alternative jobs" as discussed by the VE (Tr. 9). Plaintiff filed for judicial review of the administrative decision on May 21, 2010.

**BACKGROUND FACTS**

Plaintiff, born September 24, 1964 was 42 when the ALJ issued his decision (Tr. 20).  She completed two years of college and worked previously as a cleaner and data entry clerk (Tr. 57, 60).  Her application for disability alleges disability as a result of back problems and migraine headaches (Tr. 56).

    **A.  Plaintiff's Testimony**

Plaintiff testified that she lived in a single family home in Redford, Michigan with her son (Tr. 316).  She reported that she worked most recently as a janitor for a cleaning service (Tr. 317).  She indicated that she stopped working after experiencing swelling in her left arm, neck and back pain, and problems bending (Tr. 317-318).  She stated that she had not worked since January, 2005 (Tr. 316).  Plaintiff reported that before working as a janitor, she was a medical data processor (Tr. 318).  She opined that she would be unable to go back to her data processing job because of left hand problems, her inability to sit for extended periods, migraine headaches, and memory problems (Tr. 319).

Plaintiff reported that she experienced at least two migraine headaches each week requiring her to take Vicodin, morphine, and Motrin (Tr. 320).  Plaintiff reiterated that she was unable to work as a data processor because she had difficulty retaining information, was unable to lift heavy charts, and had outdated skills (Tr. 322).  Plaintiff opined that because of left side problems, she would be unable to perform any job, noting that she experienced knee pain and only limited use of her left hand (Tr. 322).  She added that her "nerves" and medication side effects caused chest pains (Tr. 324).  Plaintiff alleged that due to agoraphobia-like symptoms, she would be unable to perform any work (Tr. 325).

Plaintiff testified that she had a herniated disc of the cervical spine but was reluctant to undergo surgery at present (Tr. 327).  She noted that her physician had prescribed a cervical collar and that she had undergone physical therapy on two occasions (Tr. 327, 329).  Plaintiff's counsel interjected that his client currently took Wellbutrin and Xanax but had not been referred for

psychiatric care (Tr. 330). The ALJ then proposed ordering a psychiatric exam (Tr. 331). Plaintiff, resuming her testimony, stated that sitting for long periods created leg numbness (Tr. 333). She denied socializing or working since a left arm at injury in January, 2005 (Tr. 336). Plaintiff acknowledged that she continued to drive short distances (Tr. 340).

### B. Medical Evidence

#### 1. Treating Sources

In April, 2005, Plaintiff sought treatment from neurologist Alex M. Steinbock, D.O. for left arm pain and swelling (Tr. 163). Dr. Steinbock ordered an MRI of the cervical spine and recommended physical therapy (Tr. 164). The same month, an MRI of the cervical spine showed disc herniations at C4-5 and C5-6 (Tr. 273). Dr. Steinbock noted 5/5 strength in both extremities, but positive Tinel's bilaterally and "positive Spurling and reverse Spurling on the left" (Tr. 164). The same month, treating notes indicate that the two herniations were consistent with Plaintiff's report of pain (Tr. 271). In June, 2005, Dr. Steinbock, noting the presence of a herniated disc and cervical radiculopathy, referred Plaintiff to a pain clinic for epidural steroid injections (Tr. 160). The same month, Plaintiff sought emergency care for chest pain (Tr. 137). Plaintiff was treated and released after an EKG and other imaging studies were negative for abnormalities (Tr. 138, 147). In July, 2005, Dr. Steinbock refilled prescriptions for Cataflam and Skelaxin (Tr. 158).

The same month, treating notes by Timothy Wright, M.D. referenced the imaging studies showing a disc herniation at C4-5 and C5-6 (Tr. 171, 267). The following month, an MRI of the brain and EMG studies of both extremities were unremarkable (Tr. 152-153). In September, 2005, Plaintiff received another in a series of epidural injections and was referred to a surgeon (Tr. 148, 166).

In October, 2005, Peter Ianna, Ph.D., noting Plaintiff's occupational and medical history, stated that results of psychological testing suggested "a high suicide risk in the immediate future," despite Plaintiff's statement that she would never commit suicide (Tr. 175). He found that Plaintiff was experiencing "severe depression that is secondary to . . . severe intractable pain and markedly

-3-

reduced functional capacities" (Tr. 175). He assigned Plaintiff a GAF of 45[1] (Tr. 175). January, 2006 nerve conduction studies were normal except for potential abnormalities at the right elbow (Tr. 257-258).

The same month, Thulasi Divi, M.D. completed a Medical Examination Report, finding that Plaintiff experienced radiculopathy, neck pain, thyroid disease, asthma/COPD, high cholesterol, fatigue, depression, and insomnia (Tr. 253). He opined that Plaintiff was able to lift a maximum of "less than 10 pounds" on an occasional basis and sit, stand, or walk for less than two hours in an eight-hour day (Tr. 254). He precluded all pushing, pulling, fine manipulations, and reaching on the left side (Tr. 254). A February, 2006 MRI of the cervical spine showed a herniation at C5-6 with mild to moderate compression (Tr. 177, 251, 289). An MRI of the lumbosacral spine showed herniation at L3-4 and S5-S1 (Tr. 178, 250A). September, 2006 treating notes show that Plaintiff reported anxiety and depression (Tr. 218).

March, 2007 treating notes state that Plaintiff experienced hypotension, radiculopathy, cardiac arrhythmia, tendinitis, a thyroid disorder, hypoglycemia, GERD, and anxiety (Tr. 285). Dr. Divi stated that as a result of these conditions and the combined effects of depression and anxiety, Plaintiff was unable to perform any work (Tr. 292). The same month psychological intake notes state that Plaintiff presented "as significantly depressed and anxious" (Tr. 294). She reported poor sleep, crying, loss of previous interests, and concentrational problems (Tr. 294). Plaintiff was assigned a GAF of 40[2] (Tr. 295).

---

[1] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* )(4th ed.2000).

[2] A GAF score of 31-40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders-Text Revision* at 34 ( DSM-IV-TR) (4th ed.2000).

### 2. Non-Examining Sources

A November, 2005 Physical Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff was capable of lifting 20 pounds occasionally and 10 pounds frequently; sitting, standing, and walking for approximately six hour per eight-hour workday; and unlimited pushing or pulling in both extremities (Tr. 110). Postural limitations consisted of occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 111). The Assessment found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 112-113).

The same month, Yousuf Zahra, M.D. performed a Psychiatric Review Technique on behalf of the SSA (117-130). The Technique found the presence of an affective disorder (depression) (Tr. 120). The "B" Criteria findings included moderate difficulties in maintaining concentration, persistence, or pace, but otherwise mild restrictions (Tr. 127). A Mental Residual functional Capacity Assessment performed the same month found moderate limitations in the ability to understand, remember, or carry out detailed instructions, maintain concentration for extended periods, and set realistic goals (Tr. 132). Plaintiff's work abilities were deemed otherwise unimpaired (Tr. 131-132). The Assessment concluded that Plaintiff retained the ability "to perform simple unskilled tasks on a sustained basis" (Tr. 133).

### 3. Material Submitted Subsequent to the ALJ's Decision But Prior to the Appeals Council Decision

In July, 2007, Plaintiff underwent a consultive psychological evaluation (Tr. 298-302, 331, 346).[3] Psychiatrist Richard Feldstein, M.D. noted that Plantiff demonstrated "lower feelings of self-worth and self-esteem" with psychomotor retardation (Tr. 300). She appeared "anxious and angry" with a depressed mood (Tr. 300). Dr. Feldstein found that Plaintiff experienced "marked impairment as to activities of daily living" and in social functioning (Tr. 302). He found that "frequent impairments and deficiencies of concentration" resulting in "an inability to maintain

---

[3]The results of the exam were not submitted until after the October 15, 2007 decision by the ALJ, but before the Appeals Council accepted review (Tr. 297).

energy levels to complete tasks in a timely or effective manner" (Tr. 302). He opined that Plaintiff would be unable to resume employment given her combination of physical and psychological problems (Tr. 302). Dr. Feldstein assigned Plaintiff a GAF of 50 with a guarded prognosis (Tr. 301).

### C. Vocational Expert Testimony

VE Lawrence Zatkin classified Plaintiff's former work as a data entry clerk as semiskilled and sedentary, and work as a janitor as unskilled, medium/heavy[4] (Tr. 347).

The VE found that if Plaintiff were limited to "sit down work" with a sit/stand option and limited to unskilled service jobs, she could perform the work of a cashier (parking lot) (3,500 positions in the southeastern Michigan region) as well as the work of an information clerk and surveillance monitor (5,000) (Tr. 348-349). The VE testified that if Plaintiff's testimony that she experienced frequent panic attacks, psychotropic medication side effects, blurred vision, concentrational problems, and paranoia were fully credited, she would be unable to perform any work (Tr. 350). The VE stated that his testimony was consistent with the information found in the *Dictionary of Occupational Titles* (Tr. 349).

### D. The ALJ's Decision and Appeals Council Modification

Citing Plaintiff's medical records, ALJ Blum found the severe impairments of "chronic neck and low back pain due to degenerative arthritis and depression and anxiety," but that none of the conditions met or medically equaled a Listing found in Appendix 1, Subpart P, Regulations No. 4 (Tr. 24). The ALJ found a Residual Functional Capacity ("RFC") for "unskilled sedentary work offering a sit/stand option and limited contact with others," determining that Plaintiff was capable of performing her former work as a cashier, receptionist or data entry clerk (Tr. 24).

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

Concluding that Plaintiff's allegations of disability were "not wholly credible," the ALJ observed that she had never received psychological treatment, and continued to participate in a range of household and social activities (Tr. 23).  He also noted that Plaintiff's posture and gait were normal and that an MRI of the brain was negative for abnormalities (Tr. 22).

On March 26, 2010, the Appeals Council found that the ALJ's RFC limiting to Plaintiff to "unskilled work" contradicted the finding that she could perform her past relevant "semi-skilled" work as a receptionist or data entry clerk (Tr. 8 *citing* 24).  However, the Appeals Council declined to remand the administrative decision, noting that "the Vocation Expert also identified suitable alternative jobs which claimant would be capable of performing" within the limitations found in the RFC (Tr. 9).

### **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir.  1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). Because here, "the Appeals Council reviewed and supplemented the decision of the ALJ, the review is of the [A]ppeals Council decision and the portions of the ALJ

decision that it adopted." *O'Dell v. Astrue,* 736 F.Supp.2d 378, 385 (D.N.H. 2010)(citing *Sims v. Apfel,* 530 U.S. 103, 106-07, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000)).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

Plaintiff argues first that the ALJ's Residual Functional Capacity Assessment ("RFC") did not account for her full degree of limitation.  *Plaintiff's Brief* at 2, *Dock. #8.*   Next, she contends that the ALJ failed to consider medical evidence supporting her treating physician's opinion. *Id.* at 3-5.  Plaintiff, submitting additional records with her summary judgment motion, also argues that she is entitled to a "sentence six" remand for consideration of evidence not reviewed by either the ALJ or Appeals Council.  *Id.* at 5-8.

### **A.   The ALJ's Consideration of Medical Evidence**

I agree that the ALJ's analysis of the medical records downplays the import of imaging studies showing physical abnormalities while placing undue emphasis on unremarkable or unrelated

findings. For example, the ALJ discounts Plaintiff's claim of back pain by noting that an MRI of the brain and an EKG was negative for abnormalities, but glosses over medical evidence confirming Plaintiff's allegations of multiple disc herniations and muscle spasms (Tr. 21-22). Thus, the RFC limiting Plaintiff to sedentary work, a sit/stand option, and limited contact with public, does not appear to address Plaintiff's full degree of physical limitation. Under the substantial evidence standard, an ALJ is required to consider all of the evidence in context. "'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record" *Laskowski v. Apfel,* 100 F.Supp.2d 474, 482 (E.D.Mich.2000)( *citing Cotter v. Harris,* 642 F.2d 700, 706 (3rd Cir.1981).

While it is a close question, the ALJ's questionable analysis of the medical records requires a remand for reconsideration of this issue, particularly given the necessity of a remand for the other reasons discussed below.

### B. A Full and Fair Hearing

A sentence four remand is also appropriate for other reasons not argued by Plaintiff's counsel, specifically, that she was not afforded a full and fair hearing. While "generally[,] arguments not raised are abandoned . . . . this rule is prudential and not jurisdictional." *Renolds v. CSS,* 2011 WL 1228165, *3 (6th Cir. April 1, 2011)(*citing Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir. 1999)). As such, "the requirement for specific objections may be excused 'in the interest of justice.'" *Id.* (citing *Kelly v. Withrow,* 25 F.3d 363, 366 (6th Cir. 1994)).

The ALJ stated repeatedly during the administrative hearing that a consultive psychiatric examination was required to assess Plaintiff's emotional impairments (Tr. 331, 346). However, the transcript contains no indication that he ever ordered such an evaluation, and his October 15, 2007 opinion makes no reference to a post-hearing examination. A psychiatric evaluation obtained by Plaintiff's former counsel was performed on July 9, 2007. The record shows however that it was not received (for Appeals Council review) until *after* the ALJ's October 15, 2007 administrative decision (Tr. 297). As the ALJ himself acknowledged, the record at the time of the hearing was

insufficiently developed to make a determination of Plaintiff's psychiatric condition. For this reason, and because the limited records before the ALJ at the time of hearing suggest a significant degree of psychiatric limitation, the failure to further develop the record amounts to reversible error. *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1051 (6th Cir. 1983),citing *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (emphasizing "the duty of the administrative law judge to fully develop the record"). The pertinent facts are stated as follows:

In November, 2005, a non-examining Psychiatric Review Technique was performed, despite the fact that Plaintiff had not undergone a previous agency-ordered psychiatric exam. On March 21, 2007, ALJ Blum presided at the administrative hearing. During the course of Plaintiff's testimony, after noting that she was not ongoing psychiatric care, he observed as follows:

> I feel derelict if I didn't spend the state['s] money and send her out for a psychiatric exam. They're giving us a problem now, they're saying we don't have any money to send out to exams and I tell them that's their problem, not mine" (Tr. 331).

After finishing his questioning of Plaintiff, the ALJ reiterated that he intended "to send her out for a psychiatric exam. . ." (Tr. 346). The medical transcript however, contains no indication that the ALJ actually ordered an exam.

On July 9, 2007, Richard Feldstein, M.D. conducted a consultive examination of Plaintiff at the request of her original counsel, Gerald D. Keller, and the report is found in the administrative record (Tr. 297-302). Dr. Feldstein found *marked* limitations in both activities of daily living and social functioning as well as significant concentrational impairments (Tr. 302). However, for reasons unknown to the Court, Dr. Feldstein's report was not submitted until several weeks after the ALJ's decision (Tr. 297).

On October 15, 2007, ALJ issued the administrative opinion, finding that Plaintiff was not disabled (Tr. 20-24). The findings contain no mention of a consultive psychiatric exam by either Dr. Feldstein or a state hired examiner. On November 1, 2007, attorney Keller filed an

administrative appeal of the decision, and on December 5, 2007, submitted Dr. Feldstein's July, 2007 report for Appeals Council review (Tr. 297).

Mr. Keller passed away on December 23, 2007. As such, the Court is unable to determine why the consultive exam findings (which strongly support the disability claim) were not submitted prior to the October 15, 2007 ALJ's decision.[5] On March 26, 2010, the Appeals Council accepted the case for review, and modified the ALJ's decision by finding non-disability at Step Five rather than Step Four (Tr. 8-9 *citing* 24) but otherwise adopted the administrative decision (Tr. 8).

Although an ALJ cannot properly assume the role of counsel, "[h]e acts as an examiner charged with developing the facts." *Lashley, supra,* 708 F.2d at 1051 ; *Richardson v. Perales, supra*, 402 U.S. at 389. The ALJ's proposed ordering of a consultive psychiatric exam was made pursuant to 20 CFR § 404.1512(f), which states that "[i]f the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense."

While the decision to seek additional examination is discretionary, the failure to exercise that discretion when necessary to meet the Commissioner's burden of proof amounts to reversible error. *Porzondek v. Secretary of Health and Human Services* 1993 WL 15135, *2 (6th Cir. 1993). Here, there is no dispute that the ALJ determined that additional examination was required, but for whatever reason not apparent from the transcript, he failed to follow through.

It should be further noted that the ALJ's firsthand impression that additional assessment was necessary is well-supported by the record as a whole. Although Plaintiff exhibited signs of

---

[5] However, because the Appeals Council conducted a substantive review of ALJ Blum's decision, counsel need not show "good cause" for the late submission of the Dr. Feldstein's findings. "[W]hen the Council has accepted the case for review and made a decision on the merits, based on all the evidence before it," evidence submitted after the administrative decision (but before the Appeals Council determination) is reviewed under sentence four, rather than sentence six of 42 U.S.C. § 405(g). *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993)(citing *Eads v. Secretary of Health & Human Servs.,* 983 F.2d 815, 817 (7th Cir.1993)). Dr. Feldstein's report therefore may be properly considered by this Court in determining whether to remand under sentence four.

psychological impairment and received psychotropic medication from her primary care physician, she indicated that she had not received meaningful mental health treatment as a result of her reluctance to leave her house (Tr. 330-332). Although her failure to seek psychiatric help could arguably support a non-disability finding, the two existing pre-hearing "consultive" evaluations (relating to Plaintiff's quest for pain management and a psychological intake assessment, respectively) show significant psychological impairments (Tr. 175, 295). A November, 2005 non-examining PRT finding only moderate difficulties in maintaining concentration, persistence, or pace, and otherwise mild restrictions (Tr. 127) did not have benefit of the March, 2007 intake notes stating that Plaintiff continued to exhibit signs of mental illness (Tr. 294).

The poorly developed psychiatric record is coupled with additional deficiencies. The ALJ rejected Plaintiff's credibility because she continued to shop and stay in contact with family members. To be sure, the ALJ's reliance on the fact that Plaintiff continued to shop was not intrinsically improper. However, the ALJ ignored her accompanying statements that her grocery shopping was limited to one hour a week, her son accompanied her to the store, and she was afraid to leave her house after dark (Tr. 84). While an ALJ need not support his findings with a preponderance of the evidence, "cherry picking" Plaintiff's statement that she continued to grocery shop (without taking into account the limited circumstances under which she emerged from her house) amounts to a failure to consider the entire record in context, resulting in a distortion of the record. *Laskowski v. Apfel, supra*, 100 F.Supp.2d at 482.

While the RFC created by the ALJ references *some* level of psychological dysfunction by stating that Plaintiff should have only "limited contact with others," it stands in sharp contrast to Dr. Feldstein's findings that marked deficiencies in daily living and social function prevent Plaintiff from performing *any* work.[6] Further, the remainder of the record, i.e. Plaintiff's testimony and the

---

[6] Pursuant to 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04, a finding that Plaintiff experienced marked limitations in both activities of daily living and social functioning would mandate a finding of disabled at Step Three of the administrative sequence. *Rabbers v. Commissioner Social Sec. Admin.* 582 F.3d 647, 653 (6th Cir. 2009).

treating notes, support significantly greater limitations than those found in the RFC[7] (Tr. 338-342). Consistent with Plaintiff's arguments that the RFC and discussion of the treating records was inadequate, the need for consideration of Dr. Feldstein's findings and/or an agency ordered examination is required for a "full and fair" adjudication of this case, and the case should be remanded under sentence four for that purpose.

### C. A Sentence Six Remand

Plaintiff also argues that she is entitled to a "sentence six" remand, based on additional material submitted with her motion for summary judgment. *Plaintiff's Brief* at 5-8. Plaintiff's present counsel notes that he made timely submissions of these additional records for Appeals Council review on February 11, 2010. *Plaintiff's Exhibits F-H*. Nonetheless, the March 26, 2010 Appeals Council decision erroneously states that no additional evidence had been received subsequent to January 19, 2010 (Tr. 8). Further, unlike Dr. Feldstein's report, the Appeals Council Exhibits do not include the records submitted on February 11, 2010 (Tr. 4.).

Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ...*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. § 405(g).

The fact that the Appeals Council overlooked timely-received evidence establishes "good cause" for its submission here. This evidence is also material to the ALJ's non-disability finding. First, a September, 2009 assessment by a physician who treated Plaintiff from April, 2007 forward

---

[7] Even assuming that the original RFC accounted for Plaintiff's full degree of impairment, the VE's job finding that she could perform the work of an information clerk does not appear to account for her need for only limited contact with others.

states she is disabled as a result of disc herniations and anxiety, depression, and a bipolar disorder. *Plaintiff's Exhibit G.* Likewise, psychiatric treating records dated March, 2005 forward showing a long-term bipolar diagnosis pose a reasonable likelihood that upon remand, the ALJ would reverse his earlier findings.[8]

Defendant argues that Plaintiff is required to show good cause for the fact that these records were submitted subsequent to the October 15, 2007 administrative decision. However, because the Appeals Council accepted review of the ALJ's opinion and allowed for the inclusion of additional relevant records until February 18, 2010, Plaintiff was not required to show good cause for evidence received on or before that date. *See* fn 5 above; *Cotton, supra,* 2 F.3d at 696. Further, Defendant does not address Plaintiff's argument that she in fact made a timely submission of Exhibits G and H to the Appeals Council. Again, as to evidence submitted to the Court, because Plaintiff has shown that the Appeals Council, and not she, erred in overlooking earlier received evidence and not placing it in the record, good cause has been established.

However, notwithstanding Plaintiff's entitlement to a sentence six remand, an error requiring a sentence four remand allows the ALJ consider the new material, whether or not she has otherwise met the requirements for a sentence six remand. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994). In this case, the Plaintiff has shown entitlement to a sentence four remand, based on the Commissioner's failure to consider Dr. Feldstein's report, which was timely submitted to the Appeals Council, and the failure to properly consider the totality of the Plaintiff's medical records. It is therefore not necessary for this Court to retain jurisdiction, as it would under a pure sentence six remand; rather, judgment should be entered for the Plaintiff, with the case being remanded under sentence four. *Id.*[9]

---

[8] These recently discovered treating records contradict the ALJ's conclusion that Plaintiff claim of disability was suspect because she had not "undergone outpatient psychotherapy" (Tr. 23).

[9] A sentence four remand which does not grant benefits, but orders further administrative proceedings, must be done in conjunction with a final judgment. *See Shalala v. Schaefer*, 509

Finally, because Plaintiff's proof of disability is significant but not "overwhelming," the errors discussed herein, while critical, do not automatically entitle the Plaintiff to an award of benefits. Instead, this case should be remanded to the administrative level for further proceedings, directing the ALJ to (1) consider Dr. Feldstein's July, 2007 findings; (2) order an additional consultive examination if necessary; (3) consider the Sentence Six evidence submitted with Plaintiff's motion for summary judgment; and (4) reconsider Plaintiff's exertional limitations in view of the entire record.

## **CONCLUSION**

For these reasons, I recommend that Defendant's motion for summary judgment be DENIED and Plaintiff's motion GRANTED to the extent that the case be remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length

---

S.Ct. 292, 303, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) (a sentence four remand requires entry of judgment); *Melkonyan v. Sullivan,* 501 U.S. 89, 101-02, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) (a final judgment must accompany a sentence four remand order).

```
```

unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

        s/R. Steven Whalen
        R.  STEVEN WHALEN
        UNITED STATES MAGISTRATE JUDGE

Dated: April 15, 2011

_____

### CERTIFICATE OF SERVICE

     I hereby certify on April 15, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on April 15, 2011: **None.**

        s/Michael E. Lang
        Deputy Clerk to
        Magistrate Judge R. Steven Whalen
        (313) 234-5217